**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

BETTY HALE,                               :

        Plaintiff,                  :

                                     Case No. 3:09CV0483

  vs.                                          :

                                     District Judge Thomas M. Rose

MICHAEL J. ASTRUE,            :    Magistrate Judge Sharon L. Ovington
      Commissioner of the Social
      Security Administration,        :

         Defendant.                :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiff Betty Hale sought financial assistance from the Social Security

Administration by applying for Supplemental Security Income ["SSI"] and

Disability Insurance Benefits ["DIB"] in November 2003, alleging disability since

December 20, 2000.  (Tr. 114-16, 878-80).  She claims to be disabled by injuries to

her back, knees, hands, arms, and legs; high blood pressure; depression; and

headaches.  (Tr. 130).

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

After various administrative proceedings, Administrative Law Judge ["ALJ"] Thaddeus J. Armstead, Sr. denied Plaintiff's SSI and DIB applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 23-47). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. # 13), the administrative record, and the record as a whole.

At a minimum, Plaintiff seeks remand of this case to the Social Security Administration to correct certain claimed errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. BACKGROUND

Plaintiff was 56 years old at the time of the administrative decision, and thus was considered to be a "person of advanced age" for purposes of resolving her DIB and SSI claims. *See* 20 C.F.R. §§ 404.1563(e); 416.963(e);[2] (*see also* Tr. 114). She has a high school education plus two years of college credits. *See* 20 C.F.R. §

---

[2]The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations.

416.964(b)(4); (*see also* Tr. 136).  Plaintiff has worked in the past as a hospital unit clerk.  (Tr. 143, 218).

Plaintiff testified at the administrative hearing that she last worked in December 2000 as a medical secretary.  (Tr. 908).  She testified that she is disabled due to pain in her neck, back and legs, as well as problems getting along with and dealing with others.  (Tr. 914-15).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence.  (*See* Doc. #8 at 3-11; Doc. #12 at 2-8).  In light of this, and upon consideration of the complete administrative record, there is no need to fully reiterate or expand on the parties' descriptions.  Still, describing a few pertinent medical source opinions will help to frame further review.

Plaintiff relies primarily on the opinions of two treating sources, Drs. Griffith and Bonds.  Plaintiff treated with Denise A. Griffith, M.D., a primary care physician at East Dayton Health Center, from August 2003 through March 2006.  (Tr. 684-732, 752-58, 795-806).  Dr. Griffith treated Plaintiff for routine medical problems and pain.  In September 2004, Dr. Griffith sent Plaintiff for imaging studies.  A cervical spine CT study showed small central disc protrusion at multiple levels with moderate left foraminal narrowing at C4-5.  (Tr. 671).  A

lumbar CT scan showed mild discogenic and moderate spondylitic changes in the lumbar spine.  (Tr. 670).  On September 23, 2004, Dr. Griffith wrote a note indicating that Plaintiff was "disabled – physically and psychologically – totally," and asking that her eligibility for assistance be evaluated.  (Tr. 685).

On March 15, 2005, Dr. Griffith opined that Plaintiff could not stand/walk for more than one and one-half hours a day or for more than 15 minutes at a time.  (Tr. 754-57).  According to Dr. Griffith, Plaintiff could not sit for more than three to four hours a day, and for only one-half hour at a time.  Dr. Griffith did not think that Plaintiff could lift more than 10 pounds occasionally or five pounds frequently.  (Tr. 757).  Dr. Griffith concluded that Plaintiff was "unemployable" for 12 months or more.  (*Id.*).

On March 2, 2006, Dr. Griffith opined that Plaintiff could stand and/or walk for one hour in an eight-hour day, and for only 15 minutes at a time; could sit for four hours in an eight-hour day, for one to two hours at a time; could lift and/or carry up to five pounds frequently; could lift and/or carry up to 10 pounds occasionally; was markedly limited in pushing and/or pulling; was moderately limited in bending, reaching, handling, and repetitive foot movements; and was "unemployable."  (Tr. 752-53, duplicate at 796-97).

4

In August 2001, Plaintiff began counseling sessions with psychologist Giovanni M. Bonds, Ph.D.  (Tr. 397-98).  Plaintiff discussed experiencing nightmares, crying spells, decreased sleep, increased appetite, nervousness, and lack of trust in others after an encounter with the police in February 2001.  (Tr. 397).  Plaintiff described feeling "angry all the time," having difficulty concentrating, and being socially withdrawn.  (*Id.*).  "She reported that she feels as though everyone is looking at her and she is ashamed and feels dirty."  (*Id.*). Dr. Bonds diagnosed post-traumatic stress disorder and a single episode of severe depression, and rated Plaintiff's Global Assessment of Functioning ["GAF"] at 50.  (Tr. 398).  Plaintiff saw Dr. Bonds on an approximately monthly basis from August 2001 to March 2003, and again from February 2005 to December 2006.  (Tr. 393-98, 811-41).

On December 5, 2001, Dr. Bonds completed a Functional Capacities Evaluation for Plaintiff's disability insurance carrier.  (Tr. 394).  Dr. Bonds opined that Plaintiff had a moderately severe impairment in her ability to relate to other people or to perform work requiring regular contact with others.  (*Id.*).  Dr. Bonds assessed Plaintiff as moderately limited in 13 other areas of mental functioning. (*Id.*).  Dr. Bonds assigned similar results in responding to interrogatories from the Ohio Bureau of Disability Determination ["BDD"] (Tr. 399-402), noting that

5

Plaintiff's ability to withstand the ordinary stress and pressures associated with day-to-day work activities was "very poor due to her lack of good emotional control." (Tr. 401).

In September 2002, Dr. Bonds reported that he had seen Plaintiff on average about once a month over the prior year. (Tr. 511-12; *see also* Tr. 791-92). Dr. Bonds noted that Plaintiff's mood was usually depressed, and that she was very nervous and had frequent crying spells. (Tr. 511). Plaintiff reported having disturbing memories and dreams about being assaulted by the police. (*Id.*). Dr. Bonds termed Plaintiff "somewhat paranoid" in that she often felt that people were talking about her negatively. (*Id.*). Plaintiff also reported being very withdrawn except for church activities. (*Id.*). "She is very preoccupied with religious thoughts and uses her religious beliefs to cope with the shame and rage that she feels." (*Id.*). Dr. Bonds noted that Plaintiff often would not answer her telephone or door at home. (*Id.*). Around people who were loud or arguing, "she becomes frightened, anxious to leave, and shaky. That will also trigger flashbacks about the police." (*Id.*). Dr. Bonds noted that Plaintiff also reported "constant pain in her right knee and back." (*Id.*). "In sessions she often grimaces and exhibits marked pain behavior. Discussion of the traumatic material usually results in more expression of her physical pain." (Tr. 512). Plaintiff reportedly

also easily became emotional and cried or acted fearful. (*Id.*). "She cannot tolerate loud noise, sudden movements, sirens, or people having an argument." (*Id.*). Dr. Bonds concluded that Plaintiff was moderately limited in concentration; functioned independently in her daily activities (including household chores, grooming and hygiene, driving and keeping appointments, and handling her finances); and was severely limited in her ability to tolerate work stress, particularly "interpersonal stress." (*Id.*).

In March 2005, Dr. Bonds opined that of 20 areas of functioning, Plaintiff had no limitations in seven areas; was not significantly limited in 10 areas; was moderately limited in three areas; and was not markedly or extremely limited in any areas. (Tr. 761-62). He also opined, however, that Plaintiff's "mental problems severely limit her in handling day to day work stress, and moderately limit her in persisting on task without excessive breaks, and getting along with others, taking criticism and handling interpersonal conflicts." (Tr. 762). Dr. Bonds concluded that Plaintiff was "unemployable." (*Id.*).

In March 2006, Dr. Bonds again provided a brief description of Plaintiff's condition, noting that Plaintiff had a "severely impaired ability to handle stress, to deal with pressure and demands for speed, accuracy and productivity on a job, and to handle interpersonal problems at work. Her persistence on task is

7

moderately impaired due to a combination of physical and mental problems."
(Tr. 760). Dr. Bonds also reported that Plaintiff was mildly limited in her ability
to maintain attention and concentration, and to understand and follow
directions. (*Id.*).

In September 2001, Plaintiff was evaluated by consulting psychologist Jerry
E. Flexman, Ph.D. (Tr. 364-68). Dr. Flexman observed that Plaintiff had a
slumped posture and notable gait disturbance. (Tr. 365). The doctor/patient
relationship was compliant. (*Id.*). "Affect was intense with lability present."
(*Id.*). Plaintiff cried during the evaluation process. (*Id.*). On memory
examination, Plaintiff was able to recall three of three objects after five minutes.
(Tr. 366). Her judgment was termed "fair," and "somatization was present."
(*Id.*). Recognition Memory Recall testing, however, revealed "[m]arked evidence
of malingering." (Tr. 367). Dr. Flexman diagnosed post-traumatic stress
disorder, pain disorder, and malingering. (*Id.*). He assigned Plaintiff a GAF
score of 70. (*Id.*). Dr. Flexman opined that Plaintiff's ability to understand and
perform simple one- and two-step instructions was fair; her ability to sustain
attention and concentration was fair; her ability to get along with supervisors and
co-workers was good; her ability to get along with the public was fair; and her

8

ability to withstand the stresses of an ordinary work environment was fair.  (Tr. 367-68).

In October 2001, state agency reviewing physician Myung J. Cho, M.D., opined that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could sit and could stand and/or walk about six hours in an eight-hour day; could balance frequently; and could climb, stoop, kneel, crouch and crawl occasionally.  (Tr. 369-76).  Another state agency reviewing physician, Eli N. Perencevich, D.O., affirmed Dr. Cho's assessment in January 2002.  (Tr. 376).

In September 2002, state agency reviewing psychologist Kristen E. Haskins, Psy.D., opined that Plaintiff "lack[ed] the requisite psychological stamina to be able to meet minimum expectations on a day to day[,] week to week basis."  (Tr. 515).  Dr. Haskins indicated that Plaintiff had some moderate to marked difficulties in maintaining social interaction, and some moderate limitations in maintaining concentration, persistence or pace.  (Tr. 513-14).

In October 2002, state agency reviewing physician Roy W. Starkey, M.D., opined that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could sit and could stand and/or

walk about six hours in an eight-hour day; and had no limitations in balancing, climbing, stooping, kneeling, crouching and crawling. (Tr. 532-39).

In May 2005, Plaintiff again was evaluated by Dr. Flexman. (Tr. 622-25). Dr. Flexman noted that Plaintiff's facial expressions were anxious and sad, and that she cried during the evaluation. (Tr. 623). On mental status testing, Plaintiff was able to recall three digits forward and three digits in reverse. (*Id.*). Her concentration was fair, although her effort was graded as poor. (*Id.*). Dr. Flexman felt that Plaintiff's response pattern was "suboptimal;" her effort on mental status was poor; and her reliability was poor and "suggested moderate malingering or distortion." (Tr. 624). Dr. Flexman again diagnosed post-traumatic stress disorder and undifferentiated somatoform disorder, added a diagnosis of major depression, and assigned Plaintiff a GAF at 50. (*Id.*). He opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out short, simple instructions; slightly limited in her ability to make simple, work-related decisions; markedly limited in her ability to sustain attention and concentration; markedly limited in her ability to interact with the public; moderately limited in her ability to interact with co-workers and supervisors; and markedly limited in her ability to respond to work pressures and changes in the work environment. (Tr. 625).

10

In June 2004, state agency reviewing psychologist Alice L. Chambly, Psy.D., opined that Plaintiff could "persist and complete tasks when she chooses to;" could "interact with others for brief social exchanges;" and could perform simple tasks requiring not more than one to two steps for completion.  (Tr. 640-43).  Dr. Chambly also opined that Plaintiff's "allegations are partially credible," and that Dr. Flexman "seemed to provide conclusions about [Plaintiff's] functional limitations based more on her subjective complaints[ ] than on her [activities of daily living]."  (Tr. 642).  State agency psychologist J. Rod Coffman, Ph.D., affirmed Dr. Chambly's assessment in October 2004.  (Tr. 643). In a separate assessment, Dr. Coffman also opined that Plaintiff could "carry out simple instructions" and "relate appropriately to coworkers, " but "would do best if not exposed to crowds."  (Tr. 736).  He further indicated that Plaintiff's "pace would be affected by pain preoccupation." (*Id.*).

In September 2004, state agency reviewing physician Jon E. Starr, M.D., opined that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could sit and could stand and/or walk about six hours in an eight-hour day; could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs frequently; and never could climb ladders, ropes, or scaffolds.  (Tr. 607-14).

11

III.    THE "DISABILITY" REQUIREMENT & ADMINISTRATIVE REVIEW

A.    <u>Applicable Standards</u>

To be eligible for SSI or DIB, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See id*.  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4); (*see also* Tr. 24).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

**B.    The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since December 20, 2000, the alleged onset

date, and continued to meet the disability insured-status requirements through

June 30, 2006 .  (Tr. 45).

The ALJ found at Step 2 that Plaintiff has the severe impairments of

hypertension; chest pain; osteoarthritis; discogenic changes, spine;

13

anxiety-related disorder; undifferentiated somatoform disorder; major depression; and post-traumatic stress disorder. (*Id.*). The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meets or equals the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (*Id.*).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of medium work with the following restrictions: no more than simple repetitive tasks; no climbing ladders, ropes, or scaffolding; all other posturals are frequent; no exposure to hazards such as or similar to heights and moving machinery; and no exposure to extremes of heat or cold. (Tr. 46). As to Plaintiff's mental RFC, Plaintiff was limited to no more than occasional contact with coworkers and supervisors and no contact with the general public. (*Id.*). Using this assessment, the ALJ found that Plaintiff could not perform her past relevant work as an unit clerk, but was capable of performing other jobs in the national economy. (*Id.*). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for SSI or DIB. (Tr. 23-47).

14

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582

15

F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    DISCUSSION

### A.    The Parties' Contentions

The main issues in this matter are whether the ALJ's determination that Plaintiff retained the RFC to perform a limited range of medium work was supported by substantial evidence, and whether the ALJ applied the correct legal standards in reaching that conclusion. (Doc. #8 at 1). Specifically, Plaintiff urges that the ALJ misapplied the standards governing medical opinion evidence by rejecting the opinion of Dr. Griffith, her treating family practice physician, as to her physical residual functional capacity, and instead crediting the state agency physician opinions. (*Id.* at 13). Plaintiff also contends the ALJ erred by rejecting the opinion of treating psychologist Dr. Bonds as to Plaintiff's mental RFC. (*Id.* at 17).

The Commissioner contends that substantial evidence supports the ALJ's decision.  (Doc. # 12).  Defendant argues that the ALJ appropriately declined to give controlling weight to the opinion of Plaintiff's family physician and treating psychologist, and reasonably explained his reasons for doing so.  (*Id.* at 9).

### B.    Medical Source Opinions

#### 1.    *Treating Medical Sources*

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ.  *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Blakley,* 581 F.3d at 406; *see Wilson*, 378 F.3d at 544.

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a

17

whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406

(citing *Wilson,* 378 F.3d at 544). More weight generally is given to the opinions of

examining medical sources than to the opinions of non-examining medical

sources. *See* 20 C.F.R. § 416.927(d)(1). Yet the opinions of non-examining state

agency medical consultants have some value, and under some circumstances can

be given significant weight. *See infra.*

        2.   <u>Non-Treating Medical Sources</u>

The Commissioner views non-treating medical sources "as highly qualified

physicians and psychologists who are experts in the evaluation of the medical

issues in disability claims under the [Social Security] Act." Social Security Ruling

96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to

automatically accept (or reject) the opinions of a non-treating medical source. *See*

*id.* at *2-*3. The Regulations explain, "In deciding whether you are disabled, we

will always consider the medical opinions in your case record together with the

rest of the relevant evidence we receive." 20 C.F.R. §416.927(b). To fulfill this

promise, the Regulations require ALJs to evaluate non-treating medical source

opinions under the factors set forth in §416.927(d) including, at a minium, the

factors of supportability, consistency, and specialization. *See* 20 C.F.R.

§416.972(f); *see also* Ruling 96-6p at *2-*3.

### C.    Analysis

####    1.    *Plaintiff's Physical Limitations*

The ALJ is responsible for weighing the record evidence, including medical source opinions, and determining whether a claimant is under a "disability."  *See* 20 U.S.C. § 416.927(e).  The ALJ's decision in Plaintiff's case confirms that he weighed the medical source opinions and other evidence regarding Plaintiff's physical limitations under the required legal criteria, and reasonably concluded that Plaintiff was not under a "disability" as defined by the Social Security Act.

The ALJ's decision demonstrates that he properly considered but rejected the opinions of Dr. Griffith, the treating medical source whose findings most favored Plaintiff.  (*See* Tr. 27, 31, 33).  Acknowledging that Dr. Griffith deemed Plaintiff to be "disabled – physically and psychologically – totally" (*see* Tr. 685, 803) as well as "unemployable" (*see* Tr. 752-53), the ALJ nonetheless refused to accept those conclusions, finding that Dr. Griffith's opinions were "not supported by substantial evidence" and "not . . . credible."  (Tr. 33); *see* 20 C.F.R. § 416.927(d)(2)-(4).  Having thus concluded that Dr. Griffith's opinion was not well supported by medically acceptable data, the ALJ was not required to give that opinion controlling weight under the treating physician rule.  *See Blakley,* 581 F.3d

19

at 406; *Wilson*, 378 F.3d at 544. This Court's review confirms the reasonableness of the ALJ's decision to that effect.

In the first instance, Dr. Griffith failed to explain her opinions in any meaningful detail. Her cursory September 2004 notation that Plaintiff was totally disabled appears in the record unaccompanied by any test results or other objective medical evidence to substantiate that conclusion. (*See* Tr. 685, 803). While her March 2006 opinion that Plaintiff was "unemployable" appeared in the context of a basic medical evaluation (*see* Tr. 752-53), in response to a request for observations or "medical evidence" supporting that evaluation, Dr. Griffith simply referred generically to Plaintiff's back problems, significant depression with anxiety features, and "difficult to control" hypertension. (Tr. 753). Although Plaintiff protests that ALJ Armstead focused only on Dr. Griffith's disability conclusions while ignoring "the functional portion of Dr. Griffith's opinions" (Doc. #8 at 15; *see* Tr. 752-53; 756-57; 795-98; 800-02), the ALJ's analysis in fact was not as limited as Plaintiff claims. He specifically noted that Dr. Griffith had diagnosed Plaintiff with depression/anxiety; chronic neck pain; chronic low back pain; hypertension; GERD; and allergic rhinitis; and had described Plaintiff's condition as "poor but stable." (Tr. 27, citing Tr. 752-53). The ALJ then continued his analysis, however, observing that "[t]he extent of

functional limitation described by Dr. Griffith . . . is without objective basis when viewed within the context of the entire record."  (Tr. 33).  While the ALJ did not reiterate the specific functional limitations opined by Dr. Griffith, his explicit finding that such limitations lacked objective evidentiary support obviated the need for a more detailed discussion.

Additionally, the ALJ contrasted Dr. Griffith's opinion regarding Plaintiff's purported functional limitations to Plaintiff's own description of her daily activities (Tr. 33); to the "[r]esults of clinical tests and examinations" that "do not support the substantial degree of limitation described by treating physician Dr. Griffith;" and to "[o]ther medical . . . sources provid[ing] much less pessimistic assessments" of Plaintiff's capabilities.  (Tr. 34).  As the evidence so referenced by the ALJ does appear in the record and reasonably can be construed to be at odds with Dr. Griffith's rather dire opinion, substantial evidence supports the ALJ's reasons for declining to credit Dr. Griffith's opinion regarding the extent of Plaintiff's limitations.

Based on the ALJ's consideration of the record evidence as a whole, he reasonably concluded that Plaintiff was capable of performing a limited range of medium work activities, consistent with the restrictions set forth in the opinions provided by evaluating physicians Drs. Starkey, Cho, and Starr.  (Tr. 369-76, 532-

39, 607-14).  The ALJ reasonably relied on such medical source opinions as those that he believed to best reflect an evaluation of the record evidence as a whole and to account for Plaintiff's credible limitations.  (Tr. 30, 34).

Plaintiff further suggests that the ALJ erred by not finding her to be limited to sedentary work at age 50 and thus disabled pursuant to Grid Rule 201.14, Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.  (*See* Doc. #8 at 15).  Because the ALJ assessed Plaintiff to have a physical RFC at the limited range of medium work, however, and because, as noted *supra*, that assessment was supported by substantial evidence, including the opinions of Drs. Starkey, Cho, and Starr, this argument lacks merit.  Given the ALJ's properly supported RFC finding, he was not required to apply Grid Rule 201.14, as that Rule applies only to those age 50 or above who are able to perform only sedentary work.  *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics must match criteria in Grid Rules exactly to trigger disability finding).  ALJ Armstead therefore did not commit legal error in his assessment of Plaintiff's physical RFC.

2.  *Plaintiff's Mental Limitations*

In addressing Plaintiff's mental RFC, the ALJ rejected Dr. Bond's opinions for the same reasons that he rejected those of Dr. Griffith, *i.e.*, that Dr. Bonds did

not support his opinions with objective medical evidence and his opinion also conflicted with other record evidence.  (Tr. 33-34).  In explaining his decision not to place controlling weight on Dr. Bonds' opinions, the ALJ observed, among other things, that Plaintiff reported attending Bible study sessions and church; going to restaurants; talking with friends; babysitting her grandchildren; shopping for groceries; and driving a car.  (Tr. 33).  In so doing, the ALJ noted, Plaintiff was "engaging in activities that would be compatible with competitive employment duties if, in fact, she was sufficiently motivated to work."  (*Id.*).

Dr. Bonds' assessment also conflicted with other medical source opinions in the record.  For example, state agency reviewing psychologist Dr. Haskins opined that Plaintiff exhibited only "moderate" limitation in her ability to maintain social functioning.  (Tr. 527).  Dr. Chambly, another state agency reviewing psychologist, likewise opined that Plaintiff experienced "moderate" limitation in that area.  (Tr. 667).  The ALJ found that the state agency conclusions were a credible estimation of the degree of limitation experienced by Plaintiff in her ability to maintain social functioning.  *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) ("The Secretary . . . is not bound by treating

23

physicians' opinions, especially when there is substantial medical evidence to the contrary."). Substantial evidence thus supports the ALJs refusal to defer to Dr. Bonds' opinion, as well as his reliance on the opinions of the state agency reviewing psychologists.

Plaintiff also suggests, however, that the ALJ improperly relied on Dr. Flexman's remarks about "possible malingering and lack of effort" by Plaintiff (*see* Tr. 33) without analyzing the entirety of Dr. Flexman's opinions in accordance with the applicable regulations. (*See* Doc. #8 at 19 n.6). As the Commissioner concedes, ALJ Armstead here "never stated clearly the weight he assigned to Dr. Flexman's evaluations." (*See* Doc. #12 at 12). Defendant nonetheless urges that because the ALJ "relied on a wide range [of] aspects of the opinion evidence," including "primarily . . . the findings of Drs. Chambly and Coffman," any omission as to Dr. Flexman's opinions is irrelevant. (*See id.*). This Court disagrees.

In the absence of an opinion that deserves controlling weight, all medical source opinions, including the opinions of one-time examining physicians, must be weighed under the regulatory factors of supportability, consistency and specialization. *See* 20 C.F.R. § 404.1527(d), (f); *see also* Social Security Ruling 96-6p. The Regulations appear to emphasize this requirement by reiterating it no

fewer than three times.  *See* 20 C.F.R. § 404.1527(d) ("we consider all of the

following factors in deciding the weight to give any medical opinion...."); 20

C.F.R. § 404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20

C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions).  In addition, the

ALJ's omission was contrary to the Commissioner's Ruling 96-6p, which

provides as follows:

> [T]he opinions of State agency medical and
> psychological consultants . . . can be given weight only
> insofar as they are supported by evidence in the case
> record, considering such factors as the supportability of
> the opinion in the evidence including any evidence
> received at the administrative law judge and Appeals
> Councils levels that was not before the State agency, the
> consistency of the opinion with the record as a whole,
> including other medical opinions, and any explanation
> for the opinion provided by the State agency medical or
> psychological consultant or other program physician or
> psychologist.  The adjudicator must also consider all
> other facts that could have a bearing on the weight to
> which an opinion is entitled, including any
> specialization of the State agency medical or
> psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180, at *3.  The Sixth Circuit in *Blakley*

issued a "modest reminder" reaffirming the importance of that same continued

weighing.  *See* 581 F.3d at 409.  ALJ Armstead therefore erred by appearing to

rely on a portion of Dr. Flexman's opinion without applying the supportability

and consistency factors, at a minimum, to his opinion in its entirety.[3]  Because the record does not demonstrate that the ALJ considered all relevant factors with respect to the opinion of Dr. Flexman, his apparent partial reliance on that opinion was erroneous.

A review of Dr. Flexman's opinion further reveals that the ALJ's error in that regard cannot be presumed harmless.  Despite his suggestion that Plaintiff may have been guilty of "moderate malingering or distortion" (Tr. 624), Dr. Flexman also opined that Plaintiff was markedly limited in her ability to sustain attention and concentration; to interact with the public; and to respond to work pressures and changes in the work environment.  (Tr. 625).  Those findings seem difficult to reconcile with some of the findings of the state agency reviewing psychologists on whose opinions the ALJ expressly relied – for example, Dr. Chambly's conclusion that Plaintiff could "persist and complete tasks when she chooses to" – and seem somewhat more compatible with treating psychologist Dr. Bonds' rejected assessment of Plaintiff's mental limitations.  (*See, e.g.,* Tr. 761-62).

---

[3]Additionally, an ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *See Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000); *cf. Bowen,* 478 F.3d at 747 (ALJ erred by ignoring treating source's opinion).

As the aspects of Dr. Flexman's opinion not addressed in the ALJ's decision cannot be deemed "so patently deficient that the Commissioner could not possibly credit" them, *see Wilson*, 378 F.3d at 547, Plaintiff's challenge to the ALJ's deficient evaluation of Dr. Flexman's opinion is well taken.

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See id*.  Nevertheless,

27

Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems detailed above.  On remand, the ALJ should be directed to (1) evaluate Plaintiff's testimony and the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law; and (2) evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for SSI or DIB should be granted.

**IT THEREFORE IS RECOMMENDED THAT**:

1.    The ALJ's non-disability determination be VACATED;

2.    No finding be made regarding whether Plaintiff is under a "disability" within the meaning of the Social Security Act;

3.    This matter be REMANDED to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations and with any decision adopting this Report and Recommendations; and

4.    The case be TERMINATED on the docket of this Court.


January 26, 2011                          __s/Sharon L. Ovington_____
                                          Sharon L. Ovington
                                          United States Magistrate Judge

28

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981).